JOHN P. DEIDERICK v. ADAM GEORGE ALEXANDER.

No. 9578.

1. STATUTE OF FRAUDS — *contract by one not agent to procure deed from third person, not binding on third person though he knew and approved.* A contract entered into between a person desiring to purchase land and one who claims its ownership, which recites that title to such land is in a third person, and in which such claimant does not assume to act as agent for such third person, but only agrees to procure from him a deed, is not, under the Statute of Frauds, a contract of sale by such third person, even though he knew of, and assented to, the making of the same.

2. ESTOPPEL — *claimant under contract admitting title in third person, estopped from disputing that title.* One who founds his right to land upon an instrument which admits title in a certain person, and which does not purport to be executed by or on behalf of such person, is, in an action of ejectment brought by a grantee of such person, estopped to dispute his title and right of possession.

Error from Wabaunsee District Court. Hon. William Thomson, Judge. Opinion filed April 10, 1897. *Affirmed.*

*A. H. Case* and *J. B. Barnes*, for plaintiff in error.
*Wheeler & Switzer*, for defendant in error.

DOSTER, C. J. This is an action of ejectment brought by the owner of the legal title against the owner of the equitable title. One Amos Teter owned the land and mortgaged it to John W. Clark, who sold and assigned the mortgage to T. E. Bowman, who in turn sold and assigned it to persons in the East, becoming their agent for its collection. Afterward, Teter conveyed the land to R. B. Steele, who assumed, and agreed to pay, the mortgage. Steele took possession of the land, and he claims to have since been continuously in its possession until he gave it up to the

plaintiff in error.   Teter's deed to Steele was never recorded, and it is not clear from the evidence whether it was ever delivered ; but it appears to have been at one time in the possession of a man named Reed. Steele, being unable to pay interest on the mortgage as it matured, negotiated with Bowman, the agent of the mortgage owner, for an extension of time of payment.   Further time was granted upon the condition of Steele executing a deed of the land to Bowman as additional security.   Steele, not having his deed from Teter at hand to record and to follow with his own conveyance, procured Teter to execute a new deed, to Bowman as grantee, upon doing which the time of payment of the mortgage was extended.   The deed from Teter to Bowman was recorded in a few days after its execution.   The making of an instrument of defeasance by Bowman to Steele was agreed upon, but it was never executed ; instead, Bowman wrote Steele as follows :

"TOPEKA, KAN., June 26, 1889.

"*R. B. Steele, City:* DEAR SIR — After writing up the memorandum, as we had talked over when you were in, and talking it over with our attorney, we find that it would put ourselves in a very awkward position by accepting this deed and giving the proposed agreement, this last transaction being, in effect, a new mortgage rather than a deed in case you should put the agreement of record, as you would have a right to do.   Our attorney advises us that we have no written agreement ; but we will have a verbal understanding with you that we will hold this property, giving you an opportunity to sell it, and should we find an opportunity to sell, giving you the benefit of it, until January 1, next, but would not promise longer than that, as we would prefer to return you the deed and obtain an absolute title under foreclosure in case payment is not made.   Yours truly,      T. E. BOWMAN & Co."

About twenty months thereafter, Steele paid $430

to Bowman as interest on the mortgage, and received from him the following letter receipt:

"TOPEKA, KAN., March 4, 1891.

"*R. B. Steele, Topeka, Kan.:*   DEAR SIR—We acknowledge receipt from you of note for one hundred dollars due in ten months, signed by Robert and John Morrison; note for $82.50, due December 1, 1890, signed by David A. Boal; note for $120, due March 1, 1892, signed by Frank Main; note for $150, due December 1, 1890, signed by R. M. North. These various amounts will be credited to your account, (Teter loan) as paid in.        Yours truly,
T. E. BOWMAN & Co."

Both Steele and Bowman were desirous of making a sale of the land, and each was endeavoring to find a purchaser.

December 5, 1892, Steele arranged the terms of a sale with the plaintiff in error, and, in the forenoon of that day, so informed Bowman, who gave his assent to the same; and thereupon Steele and the plaintiff in error executed between themselves the following contract:

"TOPEKA, KAN., December 5, 1892.

"Agreement between R. B. Steele, party of the first part, and John P. Deiderick, party of the second part. Steele agrees to procure for Deiderick a good and sufficient warranty deed for the north half of the southeast quarter of section 25, township 11, range 12, in Wabaunsee County, Kansas.

"Deiderick agrees to pay for the above land the sum of $2,050, in payments as follows: To T. E. Bowman mortgage, $1,525, in payments as follows: $325 at end of second year; three hundred dollars at end of third year; four hundred dollars at the end of fourth year; and five hundred dollars at the end of fifth year; interest on mortgage and notes to begin March 1, 1893; also to T. E. Bowman $350 cash; balance to be paid to R. B. Steele in stock, as per agreement: that is, two two-year-old steers and one

yearling steer at twenty dollars each, three two-year-old heifers at fifteen dollars, two cows at fifteen dollars each, and two calves at ten dollars each; stock to be kept by Deiderick until March 1, 1893, without expense to first party.

"It is understood that title to said real estate is now in T. E. Bowman. Received on above contract twenty dollars to apply on above $350 cash to T. E. Bowman. Interest on all back payments at seven per cent.                         R. B. STEELE.
                          JOHN P. DEIDERICK."

Some time during the same day, Bowman sold the land to Alexander, the defendant in error. In the afternoon of that day, after the sale to the defendant in error and after the execution of the above-quoted agreement, Steele went to Bowman's office and, in the presence of Alexander, again stated the fact of the sale made by him, and afterwards, but probably not until the succeeding day, paid to Bowman twenty dollars of the cash due him on such sale. At that time, the deed from Bowman to Alexander had not been delivered; and, when delivered, it was in the form of a conveyance of Bowman's interest only, with a warranty of title to said interest without specifying the same; being, therefore, quite like a quit-claim conveyance. The plaintiff in error at once took possession of the land, which for some time before had been occupied by a Mr. North; but whether as a tenant of Steele, or of Bowman, or of both jointly, is in dispute.

The above are the material facts of the case, and upon them the questions of legal right to the land and its possession arise. On the part of the plaintiff in error it is claimed that the title to the land was in Steele, by virtue of his purchase from Teter and the unrecorded deed in the possession of Reed; that the deed from Teter to Bowman was intended for purposes of security collateral to the mortgage; and not for the

purpose of passing title, and that, therefore, Bowman had no title which he could convey to the defendant in error. As between Steele and Bowman, this is doubless true ; but it is nowhere shown that Alexander knew that such was the case, or had knowledge of any fact which would charge him with notice, unless it be that his deed of special sale and warranty, and North's possession, were sufficient to put him upon inquiry. The case, however, is not determinable upon the question whether Steele was in fact the legal owner, or whether Bowman was the legal owner or a mere mortgagee, or trustee for the mortgagee. It is determinable upon the instrument of December 5, which Steele and the plaintiff in error executed between themselves. In that instrument Steele does not profess to be the owner of the land, but explicitly admits that the ownership is in Bowman. Both he and the plaintiff in error expressly declare that, as between them, "it is understood that title to said real estate is now in T. E. Bowman." Steele, in that instrument, does not profess to be even Bowman's agent for sale, but only undertakes "to procure for Deiderick a good and sufficient warranty deed." In whomsoever the title to this land may have really existed, the one person, Steele, who claims it to be in himself, likewise declares that such is not the case, but that it is in Bowman ; and whatever authority to sell the land Steele may have received from Bowman, he does not undertake to exercise for him or on his behalf, but alone undertakes, as his own personal agreement, to procure a deed for the land. Whatever the plaintiff in error may have been led to believe as to the person in whom the title to this land was vested, all his rights thereto are based upon a contract in which he expressly admits title in Bowman ; and whatever he may have been led to believe as to Steele's agency for Bowman,

he took no contract of sale from such agent, but took only such agent's personal covenant to procure for him a deed to the land. Whatever the previous conversations, understandings and oral agreements between Steele and Bowman were, any and all such matters have now been merged into a written instrument upon which the plaintiff in error founds his rights. That instrument not only gives him his rights, but limits them as well; and, under the settled legal principle, is the exclusive evidence of such rights. He can base thereon no action against Bowman, either for specific performance or otherwise ; because, under the prohibitive terms of section 6 of the Statute of Frauds,—

" No action shall be brought whereby to charge a party upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

He can base upon this instrument no defense to an action against himself by Bowman or his grantee, because of the further prohibitive terms of section 5 of the Statute of Frauds, which declares that " no leases, estates, or interests, of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law."

The question whether North, the occupant of the land, was the tenant of Steele or of Bowman, has been elaborately discussed, and the law of notice from possession of lands has been much dwelt upon ; but both these matters are easily disposed of by the simple ob-

servation that, when he executed an instrument admitting Bowman's title to the land, and when Steele, his assumed grantor, made the same admission in the same instrument, the plaintiff in error admitted that North's occupancy was the possession of Bowman.

The instruction of the court to find for the defendant in error, plaintiff below, was correct, and the judgment is affirmed.